### UNITED STATES

v.

**Robert Ernest WEST, Jr., 250 19 8571, Hull Technician Fireman Apprentice (E–2), U. S. Naval Reserve.**

**NCM 78 1118.**

U. S. Navy Court of Military Review.

Sentence Adjudged 31 May 1978.

Decided 8 Feb. 1979.

LCDR William C. Henderson, JAGC, USN, Appellate Defense Counsel.

LCDR Paul B. Thompson, JAGC, USN, Appellate Government Counsel.

Before CEDARBURG, C. J., and FERRELL and ROOT, JJ.

CEDARBURG, Chief Judge:

Appellate counsel are in agreement that *United States v. Iverson,* 5 M.J. 440 (CMA 1978) makes necessary the remand of the record in this case for compliance with *United States v. Goode,* 1 M.J. 3 (CMA 1975). We add our concurrence. We question, however, the necessity for procedural rules, such as that announced by *Goode* and enforced by *Iverson,* which are neither necessary to ensure a fair trial nor required for an effective or complete appellate review. One of the stated purposes of *Goode,* to minimize delay in completion of appellate review, has all too frequently been subverted by the *Goode* practice which has evolved. The instant case, to effect compliance with the *Goode* rule, already has generated substantial "paperwork" with a potential for much more. Such "paperwork," while time-consuming and counterproductive to expeditious finality of review, adds little or nothing, either to the objective fairness or, to the perception of fairness of the proceedings. *Goode* is illustrative of mandates for procedures which are deficient in substantive rationale. These new procedures layer on to existing rules and are further complicated in application by yet additional interpretive decisions, as *Iverson,* the totality of which contributes most generously but unnecessarily to the "JAG papermill" decried in speech and print. *See* Navy Times, December 18, 1978 at 23, col. 1.

In the case at bar, the appellant pleaded guilty in accordance with the terms of a pretrial agreement. He was convicted and awarded a bad-conduct discharge as well as other ancillary penalties, but no confinement. Although not required by the pretrial agreement, the punitive discharge was suspended by the supervisory authority. Without confinement or discharge, appellant apparently continued to serve in a normal manner aboard the USS DWIGHT D. EISENHOWER (CVN 69). His trial defense counsel was released from active duty prior to completion of the staff judge advocate review and substitute counsel was appointed to receive service of it. The substitute counsel reviewed the staff judge advocate review and made a specific response. Predictably, since the appointment of substitute counsel had antedated *Iverson,* no evidence was included in the record to show that appellant accepted the substitute counsel or formed an attorney-client relationship with him. (Query, would a refusal, in the present case, by the accused to accept substitute counsel and to enter into an attorney-client relationship forever foreclose court-martial finality?)

There has already been generated below three "pieces of paper" related to compliance with the *Goode* rule. The briefs of counsel on the "issue" involve two more pieces of paper. Our action remanding the record to the Judge Advocate General is yet another piece of paper, as will be his mandate returning the record to the supervisory level. With appellant at sea and substitute counsel ashore, the possibilities for generating additional pieces of paper before appel-

late review can commence again are magnified. And what are we belaboring with this "JAG paperwork?" The "paperwork" is dedicated to establishing "on the record" counsel's view of the legal adequacy of the staff judge advocate review, a document, the need and vitality of which is seriously questioned in the system of military justice as presently structured. The legal adequacy of such a review can be determined objectively (as was done before the decision in *Goode*) by this Court and the Court of Military Appeals in the review of the case pursuant to our statutory roles. Whether the staff judge advocate review is prejudicially erroneous is readily determinable by appellate courts referencing extensive case law. "Paperwork" can be generated just as it can be eliminated by court decisions. An intermediate court cannot abate paperwork, however, when to do so would be contrary to the holding of a higher court. We thus add to the "papermill" by remand of the record in this case in applying ruling case law.

The record is remanded to the Judge Advocate General for return to the supervisory authority. The record should be supplemented to establish the acceptance by appellant of substitute counsel and establishment of an attorney-client relationship if that, in fact, has already occurred. If the requirements of *United States v. Iverson* have not been met, compliance should be effected and a new action taken by the supervisory authority. The record should be returned to this Court upon completion of the action directed for further review in accordance with Article 66, Uniform Code of Military Justice, 10 U.S.C.A. § 866.

Judge FERRELL and Judge ROOT concur.